# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AMERICAN GENERAL LIFE INSURANCE COMPANY, | : : : | CIVIL ACTION |
| Plaintiff, | : : | |
| v. | : : | No. 09-3191 |
| LAVI SHENKMAN, et al., | : : | |
| Defendants. | : : | |

## MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                                                                 **JULY 27, 2010**

Presently before this Court is a Motion for Summary Judgment filed by Plaintiff American General Life Insurance Company ("American General"). For the reasons set forth below, American General's Motion will be granted.

## I.    FACTS

In 2006, American General issued life insurance policy number U1E000289L (the "Policy"), insuring the life of Zeev Shenkman ("Shenkman"), to Irrevocable Agreement of Trust dated June 23, 2003, with Shenkman as the Settlor (the "Irrevocable Trust"). On November 13, 2008, Shenkman committed suicide.

The "General Provisions" section of the Policy contains the following language: "Suicide Exclusion. If the Insured takes his or her own life, while sane or insane, within 2 years from the Date of Issue, We will limit the Death Benefit Proceeds to the premiums paid less any policy loans and less any partial cash surrenders paid" (the "Suicide Exclusion"). (Pl.'s Mot. Summ. J., Ex. A at AGL0022.) The "Policy Schedule" section of the Policy states: "DATE OF ISSUE:

DECEMBER 19, 2006." (Id. at AGL0003.) The "Date of Issue" is also defined in the Policy as "the date on which the first premium is due. The Date of Issue is also the date from which all policy years, anniversaries, and Monthly Deductions dates are determined." (Id. at AGL0007.) American General asserts that December 19, 2006 is the date from which it determined all policy years, anniversaries and Monthly Deductions dates; Defendants do not dispute this assertion.

The face of the Policy provides: "The first premium must be paid on or before delivery of this policy." (Id. at AGL0001.) The Policy also states that "[y]ou have paid the first premium and have submitted an application, a copy of which is attached." (Id. at AGL0007.) Finally, attached to the Policy is a "Policyowner Acknowledgment of Policy Delivery or Producer's Certification of Mailing of Policy to the Policyowner," signed and dated December 12, 2006 by Ruth Shenkman, one of the Trustees of the Irrevocable Trust (the "Acknowledgment of Policy Delivery"). (Id. at AGL0041.)

On July 17, 2009, American General filed a Complaint for Declaratory Relief in this Court seeking, inter alia, a judgment that the Suicide Exclusion limits Death Benefit Proceeds to the premiums paid less any policy loans and less any partial cash surrenders paid. (Pl.'s Compl. at 6.) On March 18, 2010, American General filed its Motion for Summary Judgment. On April 1, 2010, Defendants filed their Response in Opposition to the Motion for Summary Judgment. On May 26, 2010, American General filed a Reply to the Response to the Motion for Summary Judgment. On June 9, 2010, Defendants filed a Sur-Reply in Opposition to the Motion for Summary Judgment. On July 2, 2010, American General filed a Sur-Reply in Support of the Motion for Summary Judgment.

American General argues that the Policy contains an express and unambiguous Date of

Issue of December 19, 2006 in the Policy Schedule. Because the date of Shenkman's suicide, November 13, 2008, was less than two years from this alleged Date of Issue, American General asserts that pursuant to the Suicide Exclusion, Death Benefit Proceeds are limited to the premiums paid less any policy loans and less any partial cash surrenders paid.

Defendants, however, argue that the Date of Issue is ambiguous because the date of December 19, 2006, as set forth in the Policy Schedule, directly conflicts with the definition of the Date of Issue in the Policy as the date on which the first premium is due. Defendants claim that because any ambiguity must be construed in favor of the insured, the Date of Issue must be the date when the first premium is due. Defendants further assert that because a § 1035 exchange[1] occurred, the first premium was due when American General made the request for surrender. Defendants allege that this date was November 10, 2006, more than two years before Shenkman's suicide, and therefore, beyond the Policy's two-year Suicide Exclusion. Finally, Defendants maintain that Shenkman reasonably expected that the Suicide Exclusion would not apply because: (1) American General specifically represented that it would not surrender Shenkman's existing coverage until after the Policy was issued; and (2) Shenkman had a reasonable expectation of coverage from the date which the § 1035 Absolute Assignments were

---

[1] As explained by the Supreme Court of Rhode Island:

> 26 U.S.C. § 1035 of the Internal Revenue Code permits tax-free exchanges of life insurance policies. This is referred to as a "§ 1035" exchange and is initiated by the replacing insurer, who supplies the insured with a form that compares the existing policy with the replacement. The insured completes the form and an insurance application with the replacing insurer, who then notifies the original insurer that a § 1035 exchange has taken place. The original insurer is then obligated to pay the surrender value directly to the replacing insurer.

Zarrella v. Minn. Mut. Life Ins. Co., 824 A.2d 1249, 1254 n.8 (R.I. 2003).

given on October 20, 2006.

## II.     STANDARD OF REVIEW

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper if "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).  The moving party has the initial burden of informing the Court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party.  Anderson, 477 U.S. at 249.  A factual dispute is material only if it might affect the outcome of the suit under governing law.  Id. at 248.

To defeat summary judgment, the non-moving party cannot rest on the pleadings, but rather, that party must go beyond the pleadings and present "specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2).  Similarly, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion.  Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989) (citing Celotex, 477 U.S. at 325).  Further, the non-moving party has the burden of producing evidence to establish prima facie each element of its claim.  Celotex, 477 U.S. at 322-23.  If the Court, in viewing all reasonable inferences in favor of the non-moving party, determines that there is no genuine issue of material fact, then summary judgment is proper.  Id.

at 322; Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 83 (3d Cir. 1987).

## III. DISCUSSION

Pennsylvania courts interpret insurance contracts as a matter of law. See Home Ins. Co. v. Law Offices of Jonathan DeYoung, P.C., 32 F. Supp. 2d 219, 223 (E.D. Pa. 1998). The Court must read the insurance policy as a whole and "its terms, when unambiguous, must be construed according to their plain and ordinary meaning." Jacobs Constructors, Inc. v. NPS Energy Servs., 264 F.3d 365, 376 (3d Cir. 2001). The policy's language should not be tortured to create ambiguities; rather, the policy should be read to avoid them, if possible. See Home Ins. Co., 32 F. Supp. 2d at 223; see also St. Paul Fire & Marine Ins. Co. v. U.S. Fire Ins. Co., 655 F.2d 521, 524 (3d Cir. 1981). In other words, "[c]ourts should not[]. . . strain to find an ambiguity." Regents of the Mercersburg Coll. v. Rep. Franklin Ins. Co., 458 F.3d 159, 172 (3d Cir. 2006).

Furthermore, the policy should not be rendered ambiguous by the mere fact that the parties disagree as to the proper construction. See Pizzini v. Am. Intern. Specialty Lines Ins. Co., 210 F. Supp. 2d 658, 667 (E.D. Pa. 2002). Rather, a term is ambiguous only if it is reasonably susceptible to different constructions, is capable of being understood in more than one sense and is "obscure in meaning through indefiniteness of expression or has a double meaning . . . ." Id. If one of the two proffered meanings is unreasonable, there is no ambiguity. Trizechahn Gateway LLC v. Titus, 976 A.2d 474, 483 (Pa. 2009). Moreover, "[w]hen the language of an insurance policy is clear and unambiguous, a court must enforce that language." Melrose Hotel Co. v. St. Paul Fire & Marine Ins. Co., 432 F. Supp. 2d 488, 495 (E.D. Pa. 2006); see also Assoc. Elec. & Gas Ins. Servs., Ltd. v. Rigas, 382 F. Supp. 2d 685, 697 (E.D. Pa. 2004). However, "[a]mbiguous provisions in an insurance policy must be construed against the insurer and in

5

favor of the insured; any reasonable interpretation offered by the insured, therefore, must control." McMillan v. State Mut. Life Assurance Co., 922 F.2d 1073, 1075 (3d Cir. 1990) (citations omitted).

Pennsylvania case law also dictates that the "proper focus for determining issues of insurance coverage is the reasonable expectations of the insured." Reliance Ins. Co. v. Moessner, 121 F.3d 895, 903 (3d Cir. 1997) (internal and external citations omitted). In most cases, "the language of the insurance policy will provide the best indication of the content of the parties' reasonable expectations." Bensalem Tp. v. Int'l Surplus Lines Ins. Co., 38 F.3d 1303, 1309 (3d Cir. 1994). Courts, however, must examine "the totality of the insurance transaction involved to ascertain the reasonable expectations of the insured." Dibble v. Sec. of Am. Life Ins. Co., 590 A.2d 352, 354 (Pa. Super. Ct. 1991). Consequently, where the insurer or its agent has created in the insured a reasonable expectation of coverage, "even the most clearly written exclusion will not bind the insured." Reliance Ins. Co., 121 F.3d at 903 (citations omitted).

As stated, the Policy Schedule reads in pertinent part: "DATE OF ISSUE: DECEMBER 19, 2006." (Pl.'s Mot. Summ. J., Ex. A at AGL0003.) The Date of Issue is also defined in the Policy as "the date on which the first premium is due." (Id. at AGL0007.) The face of the Policy states: "The first premium must be paid on or before delivery of this policy." (Id. at AGL0001.) The parties do not dispute that the date of delivery of the Policy was December 12, 2006, as evidenced by the Acknowledgment of Policy Delivery.

Upon viewing the Policy as a whole, we find that the Date of Issue is ambiguous because it is capable of being understood in more than one sense. One definition of the Date of Issue in the Policy states that the Date of Issue is December 19, 2010. The Date of Issue is also defined,

6

however, as the date on which the first premium is due. Because the "first premium must be paid on or before delivery" of the Policy, and because the Policy was delivered on December 12, 2006, the latter definition of the Date of Issue is different than the former; therefore, the Date of Issue is ambiguous.

However, we do not agree with Defendants that the first premium was due when American General made the request for surrender. The Policy clearly states that the "first premium must be paid on or before delivery" of the Policy. The language "on or before" a particular date ordinarily signifies that such date is the "due date." See, e.g., Fleetboston Fin. Corp. v. United States, 68 Fed. Cl. 177, 179 (Fed. Cl. 2005) ("The last date prescribed for the payment of tax is the *due date* for the tax return on which the tax is reported[]. . . . [T]he IRS is authorized to assess interest on any tax that is not paid *on or before* the last date prescribed for payment.") (emphasis added) (citation and quotation marks omitted); Wenger v. Comm'r, 79 T.C.M. (CCH) 1995 (T.C. 2000) ("Petitioner points out that he made the required contributions to the . . . plan *on or before* October 16, 1995, the *due date* of his income tax return[]. . . .") (emphasis added); Birmingham Corp. v. Comm'r, 138 F.2d 455, 456 (5th Cir. 1943) ("The 'time of filing' of a return means a filing *on or before* the *due date* . . . .") (emphasis added). To find that the relevant language allows for a reasonable conclusion that the first premium was, in fact, due on a date prior to the delivery of the Policy would require us to set aside the ordinary understanding of such language. As discussed, there is no ambiguity where one of the two proffered meanings is unreasonable. Trizechahn Gateway LLC, 976 A.2d at 483. Therefore, we find it appropriate to read the Policy to avoid such an unusual – and indeed, unreasonable – interpretation as that which Defendants advocate. See Home Ins. Co., 32 F. Supp. 2d at 223.

7

We are mindful of the case law holding that where the insurer or its agent has created in the insured a reasonable expectation of coverage, "even the most clearly written exclusion will not bind the insured." Reliance Ins. Co., 121 F.3d at 903 (citations omitted). Generally, however, "the language of the insurance policy will provide the best indication of the content of the parties' reasonable expectations." Bensalem Tp., 38 F.3d at 1309. Upon examining "the totality of the insurance transaction involved," Dibble, 590 A.2d at 354, we find that American General did not engage in any conduct which would have caused Shenkman to adopt Defendants' ostensible understanding that the Policy language stating that "[t]he first premium must be paid on or before delivery of this policy" in fact meant that the first premium could have been due on a date prior to the delivery of the Policy.

Defendants argue that the § 1035 Absolute Assignments provided Shenkman with: (1) a representation "that [American General] would not surrender Mr. Shenkman's existing coverage until *after* American General's policy was issued"; and (2) a "reasonable expectation of coverage from the date that the [§] 1035 Absolute Assignments were given (October 20, 2006)." (Defs.' Sur-Reply Br. at 2 (emphasis in original).) Notwithstanding the fact that Shenkman was not a signatory to the § 1035 Absolute Assignments, the language in the § 1035 Absolute Assignments conforms with the language in the Policy regarding when the first premium was due and the effect of the payment of the first premium.

Specifically, each of the one-page § 1035 Absolute Assignments states: (1) "[t]he first premium must be paid no later than when the new policy or contract is delivered"; (2) "**the first premium must be paid no later than the time the policy applied for is delivered**"; and (3) "[t]here will be no policy or contract in effect unless the first premium is paid . . . ." (Id., Ex. 5

8

(emphasis in original).) The Court is unpersuaded that Shenkman could have reasonably concluded that the language in the § 1035 Absolute Assignments contradicted the language in the Policy regarding when the first premium was due and the effect of the payment of the first premium. Because the § 1035 Absolute Assignments are consistent with the Policy regarding when the first premium was due, we find that Shenkman could only have had a reasonable expectation that the Date of Issue was either the date expressly stated in the Policy Schedule – December 19, 2006 – or the date of the delivery of the Policy – December 12, 2006. Because the date of Shenkman's suicide, November 13, 2008, was less than two years from either of these dates, we find that pursuant to the Policy's Suicide Exclusion, Death Benefit Proceeds under the Policy are limited to the premiums paid less any policy loans and less any partial cash surrenders paid. Therefore, American General's Motion will be granted.

    An appropriate Order follows.